

FROM : METRO CREDIT PEABODY     PHONE NO. : 15789770041     Jul. 2004 11:47AM P2

**BK 6640 PG 358**

MASSACHUSETTS QUITCLAIM DEED SHORT FORM (INDIVIDUAL) 881

WE, Joseph J. Slimak and Theresa M. Slimak, Husband and wife, as tenants
by the entirety                              Essex                  County, Massachusetts
South Peabody

*being unmarried*, for consideration paid, and in full consideration of $35,000.00

grants to  Richard E. Gould and Eleanor M. Gould, husband and wife, as tenants by the
entirety, both                                    *with quitclaim covenants*
of 10 Druid Avenue, South Peabody, Ma.

the land in Peabody, in the County of Essex, Massachusetts, with buildings thereon
on and shown as Lot A on a plan showing subdivision of land in Peabody,
(Description and Encumbrances, if any)
Massachusetts, dated January 19, 1955, drawn by F.J. McCarthy, registered
surveyor, and recorded with deed of Edmund S. Gould, et ux, to Edmund R.
Gould, et al, Book 4147, Page 366, and bounded and described as follows:

NORTHEAST        by Druid Avenue Fifty-four (54) feet;

SOUTHEAST        by Sterling Avenue one hundred (100) feet;

SOUTHWEST       by a stone wall which separates the premises from
                 land shown on said plan Fifty-three (53) feet; and

NORTHWEST       by Lot B as shown on said plan, One hundred (100) feet.

Being a portion of the premises conveyed to Edmund S. Gould and Svea
V. Gould,  by deed of Barbara C. Haley dated September 8, 1952, and
recorded with Book 3922, Page 379.

Said premises are conveyed subject to a right of way, for all purposes
which streets and ways may lawfully be used in, on, and over a strip
of land nine (9) feet wide extending sixty-seven (67) feet from said
Druid Avenue over said Lot A as shown on said Plan, granted to Edmund R.
Gould and Barbara K. Gould.

For our title see deed dated October 8, 1976, recorded in the Essex
South District Registry of Deeds, Book 6287, Page 413.

*Witness our* hand s *and seal* s *this* 8 *day of* October 19 79.

Joseph J. Slimak

Theresa M. Slimak

**The Commonwealth of Massachusetts**

Essex        ss.                              October  8  19 79

Then personally appeared the above named  Joseph J. Slimak and Theresa M. Slimak

and acknowledged the foregoing instrument to be  Their    free act and deed, before me

John P. McCloin               Notary Public—Justice of the Peace

My commission expires        8. 1 -      19 36

(*Individual — Joint Tenants — Tenants in Common — Tenants by the Entirety.)

CHAPTER 183 SEC. 6 AS AMENDED BY CHAPTER 497 OF 1969

Every deed presented for record shall contain or have endorsed upon it the full name, residence and post office address of the grantee and a recital of the amount of the full consideration thereof in dollars or the nature of the other consideration therefor, if not delivered for a specific monetary sum. The full consideration shall mean the total price for the conveyance without deduction for any liens or encumbrances assumed by the grantee or remaining thereon. All such endorsements and recitals shall be recorded as part of the deed. Failure to comply with this section shall not affect the validity of any deed. No register of deeds shall accept a deed for recording unless it is in compliance with the requirements of this section.

ESSEX SS. RECORDED  Oct 29,  1979  33 M. PAST  1    P M. INST. #/5?

PROPERTY ADDRESS: 10 DRUID AVENUE, PEABODY, MASSACHUSETTS



SUMMARY APPRAISAL REPORT

# UNIFORM RESIDENTIAL APPRAISAL REPORT
**File No.** 202342GC

**Property Description**

| Property Address | 10 DRUID AVENUE | City PEABODY | State MA | Zip Code 01960 |
|---|---|---|---|---|

**Legal Description** BOOK:6640 PAGE:358 - SOUTH ESSEX REGISTRY OF DEEDS   **County** ESSEX

**Assessor's Parcel No.** 124-187    **Tax Year** 2002   **R.E. Taxes $** 1,653.90   **Special Assessments $** N/A

**Borrower** GOULD   **Current Owner** GOULD   **Occupant:** [X] Owner ☐ Tenant ☐ Vacant

**Property rights appraised** [X] Fee Simple ☐ Leasehold   **Project Type** ☐ PUD ☐ Condominium (HUD/VA only)   HOA$ N/A /Mo.

**Neighborhood or Project Name** N/A   **Map Reference** MSA: 1120   **Census Tract** 2106.00

**Sale Price $** REFINANCE   **Date of Sale** N/A   Description and $ amount of loan charges/concessions to be paid by seller N/A

**Lender/Client** METROPOLITAN CREDIT UNION   **Address** 200 REVERE BEACH PARKWAY, CHELSEA, MA 02150

**Appraiser** GAIL C. GLISERMAN   **Address** 124 SUMMIT AVENUE, BROOKLINE, MA. 02446

| Location | Urban | [X] Suburban | Rural | Predominant occupancy | Single family housing | | Present land use % | Land use change |
|---|---|---|---|---|---|---|---|---|
| | | | | | PRICE $(000) | AGE (yrs) | | |
| Built up | [X] Over 75% | 25-75% | Under 25% | [X] Owner | One family 55% | [X] Not likely ☐ Likely | | |
| Growth rate | Rapid | [X] Stable | Slow | | 180 Low 5 | 2-4 family 25% | ☐ In process | |
| Property values | Increasing | [X] Stable | Declining | Tenant | 400 High 125+ | Multi-family 5% | To: | |
| Demand/supply | Shortage | [X] In balance | Over supply | [X] Vacant (0-5%) | Predominant | Commercial 10% | | |
| Marketing time | [X] Under 3 mos. | 3-6 mos. | Over 6 mos. | Vacant (over 5%) | 250 50+ | VAC 5% | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

**Neighborhood boundaries and characteristics:** THE SUBJECT MARKET AREA IS BOUNDED BY LYNNFIELD STREET TO THE NORTH, LYNN STREET TO THE WEST, THE SALEM CITY LINE TO THE EAST AND THE LYNN CITY LINE TO THE SOUTH.

**Factors that affect the marketability of the properties in the neighborhood** (proximity to employment and amenities, employment stability, appeal to market, etc.):
SEE ATTACHED ADDENDUM.

**Market conditions in the subject neighborhood** (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time - - such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):
SEE ATTACHED ADDENDUM.

**Project Information for PUDs** (If applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? ☐ YES ☐ NO

Approximate total number of units in the subject project _____ . Approximate total number of units for sale in the subject project _____

Describe common elements and recreational facilities: N/A

| | | | | |
|---|---|---|---|---|
| **Dimensions** 53.5' X 100.' X 53.5' X 100' | | | **Topography** | LEVEL |
| **Site area** 5350 SF | Corner Lot [X] Yes ☐ No | | **Size** | AVERAGE |
| **Specific zoning classification and description** RESIDENTIAL 1A : (15000S.F./125'F) | | | **Shape** | RECTANGULAR |
| **Zoning compliance** ☐ Legal [X] Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | | **Drainage** | ADEQUATE |
| **Highest & best use as improved:** [X] Present use ☐ Other use (explain) | | | **View** | NEIGHBORHOOD |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Street | ASPHALT | [X] | | Landscaping | AVERAGE |
| Gas | [X] | | Curb/gutter | NONE | | | Driveway Surface | PAVED ASPHALT |
| Water | [X] | | Sidewalk | NONE | | | Apparent easements | NONE NOTED |
| Sanitary sewer | [X] | | Street lights | ELECTRIC | [X] | | FEMA Special Flood Hazard Area ☐ Yes [X] No |
| Storm sewer | [X] | | Alley | NONE | | | FEMA Zone C   Map Date 5/15/80 |
| | | | | | | | FEMA Map No. 250099-0010B |

**Comments** (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): SEE ATTACHED ADDENDUM.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units 1 | Foundation FIELDSTONE | Slab NONE | Area Sq.Ft. 720 | Roof ☐ |
| No. of Stories 1.25 | Exterior Walls CLAPBOARD | Crawl Space PARTIAL | % Finished 0% | Ceiling ☐ |
| Type (Det./Att.) DETACH. | Roof Surface ASPH.SHNG. | Basement YES | Ceiling N/A | Walls ☐ |
| Design (Style) CAPE | Gutters & Dwnspts. NONE/NONE | Sump Pump YES | Walls STONE | Floor ☐ |
| Existing/Proposed EXISTING | Window Type THERM CSMT | Dampness NONE NOTED | Floor CONCRETE | None ☐ |
| Age (Yrs.) 87 YEARS | Storm/Screens NO/YES | Settlement NONE NOTED | Outside Entry YES | Unknown [X] |
| Effective Age (Yrs.) 15 | Manufactured House NO | Infestation NONE NOTED | BULKHEAD | UNKNOWN |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq.Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | X | | | | | | 720 |
| Level 1 | | 1 | 1 | 1 | | | | 1 | 1.0 | | | 1,174 |
| Level 2 | | | | | 1 | | | 1 | | | | 264 |

Finished area above grade contains: 6 Rooms; 2 Bedroom(s); 1 Bath(s); 1,438 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | HDWD/CPT/LINOL | Type | STEAM | Refrigerator | [P] | None | [X] | Fireplace(s) # ____ | ☐ | None ☐ | |
| Walls | PLASTER/AVG | Fuel | OIL | Range/Oven | [X] | Stairs | ☐ | Patio | ☐ | Garage | # of cars |
| Trim/Finish | WOOD/AVG | Condition AVG | | Disposal | ☐ | Drop Stair | ☐ | Deck WOOD | [X] | Attached | |
| Bath Floor | LINOLEUM/AVG | COOLING | | Dishwasher | ☐ | Scuttle | ☐ | Porch | ☐ | Detached 1 | |
| Bath Wainscot | CERAMIC/AVG | Central NONE | | Fan/Hood | [X] | Floor | ☐ | Fence | ☐ | Built-In | |
| Doors | WOOD/AVG | Other NONE | | Microwave | ☐ | Heated | ☐ | Pool ABOVE | [X] | Carport | |
| CONDITION=AVERAGE | | Condition N/A | | Washer/Dryer | [P] | Finished | ☐ | | | Driveway 2 | |

**Additional features** (special energy efficient items, etc.): WOOD DECK AT REAR. FINISHED ROOM OVER GARAGE. THERMAL CASEMENT WINDOWS.

**Condition of the improvements, depreciation** (physical, functional, and external), repairs needed, quality of construction remodeling/additions, etc.: SEE ATTACHED ADDENDUM.

**Adverse environmental conditions** (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: SEE ATTACHED ADDENDUM.

Freddie Mac Form 70  6-93   PAGE 1 OF 2   Fannie Mae Form 1004  6-93

This form was produced with the ACI Development Rapid Forms system 8002344727

SUMMARY APPRAISAL REPORT

## UNIFORM RESIDENTIAL APPRAISAL REPORT
File No. 202342GC

**Valuation Section**

### COST APPROACH

| | | | |
|---|---|---|---|
| ESTIMATED SITE VALUE . . . . . . . . . . . . . . . . . . = $ | 125,000 | Comments on Cost Approach (such as. source of cost estimate, | |
| ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS: | | site value, square foot calculation and for HUD, VA and FmHA, the | |
| Dwelling 1,438 Sq. Ft. @ $ 86.00 = $ | 123,668 | estimated remaining economic life of the property): | |
| FNDT. 720 Sq. Ft. @ $ 15.00 = | 10,800 | SEE ATTACHED ADDENDUM | |
| DECK = | 3,000 | | |
| Garage/Carport 432 Sq. Ft. @ $ 15.00 = | 6,480 | | |
| Total Estimated Cost New . . . . . . . . . . = $ | 143,948 | | |
| Less 60 Physical \| Functional \| External Est. Remaining Econ. Life: 45 | | | |
| Depreciation $35,987 = $ | 35,987 | | |
| Depreciated Value of Improvements . . . . . . . . . = $ | 107,961 | | |
| "As-is" Value of Site Improvements . . . . . . . . . = $ | 10,000 | | |
| INDICATED VALUE BY COST APPROACH . . . . . . = $ | 243,000 | | |

### SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Address | 10 DRUID AVENUE PEABODY | 10 ST. ANNE'S AVENUE PEABODY | 2 GREENWOOD ROAD PEABODY | 238 LYNN STREET PEABODY |
| Proximity to Subject | | 3/5 MILE | 1/2 MILE | 1/4 MILE |
| Sales Price | REFINANCE | $ 269,900 | $ 268,000 | $ 249,000 |
| Price/Gross Liv. Area | 0.00 ☑ | $ 224.92 ☑ | $ 173.24 ☑ | $ 168.70 ☑ |
| Data and/or Verification Sources | ASSESSOR INSPECTION | MLS#30520849/BROKER/B&T ASSESSOR/EXT INSPECT | MLS#30554820/BROKER/B&T ASSESSOR/EXT INSPECT | MLS#30523488/BROKER/B&T ASSESSOR/EXT INSPECT |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION + (-) $ Adjustment | DESCRIPTION + (-) $ Adjustment | DESCRIPTION + (-) $ Adjustment |
| Sales or Financing Concessions | | NONE NOTED | NONE NOTED | NONE KNOWN |
| Date of Sale/Time | | 11/30/01 | 12/28/01 | 9/28/01 |
| Location | AVERAGE | AVERAGE | AVERAGE | INFERIOR 10,000 |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | FEE SIMPLE | FEE SIMPLE |
| Site | 5430 SF | 7000 SF EQUIV. | 5498 SF | 6098 SF EQUIV. |
| View | NEIGHBORHD | NEIGHBORHD | NEIGHBORHD | NEIGHBORHD |
| Design and Appeal | CAPE/AVG | CAPE/AVG | CAPE/AVG | CAPE/AVG |
| Quality of Construction | AVERAGE | AVERAGE | AVERAGE | AVERAGE |
| Age | 87 YEARS | 62 YEARS EQUIV. | 15 YEARS EQUIV. | 62 YEARS EQUIV. |
| Condition | AVERAGE | SUPERIOR -15,000 | SUPERIOR -15,000 | AVERAGE |
| Above Grade Room Count | Total 25 \| Bdrms 6 \| Baths 2 1.00 | Total 6 \| Bdrms 2 \| Baths 1.50 -1,500 | Total 6 \| Bdrms 3 \| Baths 2.00 -3,000 | Total 7 \| Bdrms 3 \| Baths 1.50 -1,500 |
| Gross Living Area | 1,438 Sq.Ft. | 1,200 Sq.Ft. 6,000 | 1,547 Sq.Ft. -2,700 | 1,476 Sq.Ft. EQUIV. |
| Basement & Finished Rooms Below Grade | FULL UNFINISHED | FULL UNFINISHED | FULL UNFINISHED | FULL UNFINISHED |
| Functional Utility | ADEQUATE | ADEQUATE | ADEQUATE | ADEQUATE |
| Heating/Cooling | CENT/WALL | CENT/NONE 500 | CENT/NONE 500 | CENT/NONE 500 |
| Energy Efficient Items | STANDARD | STANDARD | STANDARD | STANDARD |
| Garage/Carport | 1 CAR GARAGE | 1 CAR GARAGE | DRIVEWAY 4,500 | DRIVEWAY 4,500 |
| Porch, Patio, Deck, | DECK | NONE 3,000 | NONE 3,000 | NONE 3,000 |
| Fireplace(s). etc. | NONE | 1 FIREPLACE -2,500 | NONE | 1 FIREPLACE -2,500 |
| Fence, Pool, etc. | NONE | FENCE EQUIV. | NONE | NONE |
| Net Adj. (total) | | ☐ + ☒ - $ 9,500 | ☐ + ☒ - $ 12,700 | ☒ + ☐ - $ 14,000 |
| Adjusted Sales Price | | 10.6% | 10.7% | 8.8% |
| of Comparable | | -3.5% $ 260,400 | -4.7% $ 255,300 | 5.6% $ 263,000 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): THE FINAL OPINION OF VALUE IS TOWARD THE MIDDLE RANGE WITH EMPHASIS ON COMPARABLE 3 A RECENT SALE IN CLOSE PROXIMITY TO THE SUBJECT PROPERTY SIMILAR IN SIZE AND CONDITION. THE SALES CITED ARE AMONG THE MOST RECENT AND MOST SIMILAR AVAILABLE FOR WHICH VERIFIABLE INFORMATION WAS OBTAINABLE. NO TIME TIME ADJUSTMENT AS ALL SALES REFLECT CURRENT MARKET CONDITIONS. GLA ADJUSTED AT $25 S.F. NO LOT SIZE ADJUSTMENTS DUE TO INDISCERNIBLE DIFFERENCES. SEE ATTACHED ADDENDUM.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | NONE REPORTED B&T | NONE REPORTED B&T | NONE REPORTED B&T | NONE REPORTED B&T |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: SEE ATTACHED ADDENDUM.

### RECONCILIATION

| | | |
|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH . . . . . . . . . . . . . . . . . . = $ | | 260,000 |
| INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A Mo. x Gross Rent Multiplier N/A = $ | | 0 |

This appraisal is made ☒ "as is"  ☐ subject to the repairs, alterations, inspections or conditions listed below  ☐ subject to completion per plans and specifications.
Conditions of Appraisal: NO CONDITIONS OR REPAIRS REQUIRED.

Final Reconciliation: SEE ATTACHED ADDENDUM.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 6/93)
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 3/12/2002
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 260,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | |
|---|---|---|
| Signature | Signature | ☒ Did ☐ Did Not |
| Name GAIL C. GLISERMAN | Name AARON M. ADLER | Inspect Property |
| Date Report Signed 03/18/2002 | Date Report Signed 03/18/2002 | |
| State Certification # | State Certification # CR#36 | State MA |
| Or State License # TRAINEE#5031 State MA | Or State License # | State |

Freddie Mac Form 70 6-93          PAGE 2 OF 2          Fannie Mae Form 1004 6-93
This form was produced on the ACI Development, RapidForm system (800)234-8727

APPRAISALS UNLIMITED

**ADDENDUM**

| Born | GOULD | | | | File | 202342GC | |
| Property Add | 10 DRUID AVENUE | | | | Case No.: | | |
| | PEABODY | | S | MA | | | 01960 |
| Lei | METROPOLITAN CREDIT UNION | | | | | | |

THIS IS A SUMMARY APPRAISAL REPORT OF A COMPLETE APPRAISAL.

THIS APPRAISAL REPORT IS INTENDED FOR USE ONLY BY METROPOLITAN CREDIT UNION AND THEIR ASSIGNEES. USE OF THIS REPORT BY OTHERS IS NOT INTENDED BY THE APPRAISER.

THIS APPRAISAL REPORT IS INTENDED ONLY FOR USE IN MORTGAGE FINANCING. THIS REPORT IS NOT INTENDED FOR ANY OTHER USE.


**Neighborhood Market Factors**
THE SUBJECT PROPERTY IS LOCATED OFF LYNN STREET IN A RESIDENTIAL SECTION OF PEABODY. THE NEIGHBORHOOD IS CONVENIENT TO ALL AREA AMENITIES. NEIGHBORHOOD DWELLINGS CONSIST OF A COMPATIBLE MIX OF SINGLE, 2 TO 4 FAMILY DWELLINGS WITH APARTMENT/CONDOMINIUM BUILDINGS INTERSPERSED. VACANT LAND IS PRIMARILY CONSERVATION LAND WITH PARKS AND PLAYGROUNDS. COMMERCIAL INFLUENCE IS NEARBY CEMETERY AND GENERAL RETAILING AND SERVICE LOCATED AROUND THE NEIGHBORHOOD PERIMETER, NOT ADVERSE. PUBLIC TRANSIT BUS LINES AS WELL AS SHOPPING/SERVICES ARE WITHIN 1/4 MILE. LESS THAN 1 MILE TO MAJOR ROUTES 128 AND 95 FOR ACCESS TO EMPLOYMENT CENTERS. NO UNFAVORABLE FACTORS NOTED. PEABODY IS LOCATED 15 NORTH OF THE CITY OF BOSTON.

**Neighborhood Market Conditions**
SALES CONCESSIONS SUCH AS SELLER PAID CLOSING COSTS ARE NOT COMMON IN THIS MARKET. ACCORDING TO MLS RESEARCH, MARKETING TIME FOR SIMILAR, REASONABLY PRICED PROPERTIES IS UNDER 3 MONTHS. DEMAND AND SUPPLY ARE IN BALANCE. PROPERTY VALUES APPEAR STABLE. MOST SALES ARE CONVENTIONAL.

THE APPRAISER HAS RESEARCH ALL AVAILABLE DATA SOURCES INCLUDING THE MULTIPLE LISTING SERVICE (MLS), ASSESSOR'S RECORDS AND THE BANKER AND TRADESMAN AREAL ESTATE TRANSFER DIRECTORY (B&T). CONCLUSIONS REGARDING MARKET CONDITIONS ARE BASED ON THESE SOURCES AS WELL AS CONVERSATIONS WITH LOCAL BROKERS AND THE APPRAISER'S EXPERTISE IN THE SUBJECT'S MARKET AREA.

**Site Comments**
THE SUBJECT DOES NOT MEET CURRENT ZONING REQUIREMENTS AND IS A PRE-EXISTING, LEGAL NON-CONFORMING GRANDFATHERED USE WHICH IS COMMON IN THE AREA AND MARKET ACCEPTED. IN THE EVENT THE IMPROVEMENTS ARE DESTROYED, THEY MAY BE REBUILT ON THEIR ITS OWN FOUNDATION, PER THE BUILDING DEPARTMENT, CITY OF PEABODY. THIS CONDITION IS COMMON DUE TO ZONING CHANGES OVER TIME AND IS MARKET ACCEPTED.

PAVED DRIVEWAY AT RIGHT LEADS TO 1 CAR DETACHED GARAGE WITH HEATED ROOM ABOVE. THE SUBJECT IS AVERAGE SIZE FOR THE AREA WITH USABLE YARD IN REAR AND AVERAGE LANDSCAPING.
THE CURRENT USE IS THE HIGHEST AND BEST USE. IT IS LEGALLY PERMITTED, FEASIBLE AND APPROPRIATE AND GIVES THE HIGHEST PRESENT VALUE AS OF THE DATE OF INSPECTION.

THE SUBJECT IS LOCATED ON A CORNER LOT, WHICH IS NOT CONSIDERED ADVERSE OR ADVERSELY EFFECT MARKETABILITY.

THE SUBJECT HAS AN ABOVE GROUND SWIMMING POOL, WHICH IS CONSIDERED PERSONAL PROPERTY AND WAS GIVEN NO VALUE IN THE PREPARATION OF THIS APPRAISAL.

THERE IS A SUMP PUMP LOCATED IN THE SUBJECT'S BASEMENT WHICH APPEARS TO BE PRECAUTIONARY AND NOT ADVERSE. NO EVIDENCE OF DAMPNESS WAS NOTED IN THE BASEMENT ON THE DATE OF INSPECTION. THE SUBJECT PROPERTY DOES NOT APPEAR TO BE LOCATED WITHIN A FLOOD HAZARD ZONE.


**Condition of Improvements**

THE SUBJECT PROPERTY IS AN 87 YEAR OLD CAPE STYLE DWELLING OF AVERAGE CONSTRUCTION AND QUALITY. OVERALL CONDITION IS AVERAGE. 100 AMP ELECTRIC SERVICE BY CIRCUIT BREAKERS. HARDWOOD FLOORING IN LIVING ROOM AND DINING ROOM WITH CARPETED BEDROOMS AND LINOLEUM IN KITCHEN. UPDATED KITCHEN AND BATHROOM. UPDATED COSMETICS. WOOD DECK AT REAR. USABLE YARD SPACE. AMPLE CLOSET AND STORAGE SPACE. EXTERIOR, ROOF, AND DECK ARE IN ADEQUATE REPAIR. TANKLESS STEAM HEAT BY OIL HEATING SYSTEM APPEARS

**ADDENDUM**

| Borr: | GOULD | | File | 202342GC |
|---|---|---|---|---|
| Property Add | 10 DRUID AVENUE | | Case No.: | |
| | PEABODY | S    MA | | 01960 |
| Ler | METROPOLITAN CREDIT UNION | | | |

FUNCTIONAL AND ADEQUATE. FINISHED ROOM OVER GARAGE.  NO INADEQUACIES WERE NOTED.

**Adverse Environmental Conditions**

THE SUBJECT WAS CONSTRUCTED PRIOR TO 1978 AND MAY CONTAIN LEAD BASED PAINT. ON THE DATE OF INSPECTION THE APPRAISER DID NOT OBSERVE ANY APPARENT ADVERSE ENVIRONMENTAL CONDITIONS IN THE IMPROVEMENTS, ON THE SUBJECT'S SITE OR IN THE IMMEDIATE VICINITY OF THE SUBJECT PROPERTY. THE PRESENCE OF HAZARDOUS ENVIRONMENTAL SUBSTANCES SUCH AS RADON GAS, LEAD PAINT, UFFI INSULATION ETC. CANNOT BE DETERMINED DURING AN APPRAISAL INSPECTION. FURTHER, THE APPRAISER IS NOT QUALIFIED TO ANALYZE OR UNCOVER HAZARDOUS SUBSTANCES AND ASSUMES NO RESPONSIBILITY FOR SUCH CONDITIONS OR THE ENGINEERING WHICH MIGHT BE REQUIRED TO DISCOVER THE SAME. THE FINAL OPINION OF VALUE IS BASED ON THE ASSUMPTION THAT THE SUBJECT PROPERTY IS NOT NEGATIVELY AFFECTED BY THE EXISTENCE OF HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS.

THE SUBJECT'S OIL TANK IS LOCATED ABOVE GROUND IN THE BASEMENT, NO EVIDENCE OF LEAKAGE WAS NOTED ON THE DATE OF INSPECTION.

**Cost Approach Comments**
PHYSICAL DEPRECIATION CALCULATED BY THE AGE/LIFE METHOD 15/60=25% REFLECTING AVERAGE CONDITION.  THE ESTIMATED ECONOMIC LIFE IS 45 YEARS. COST DATA FROM MARSHALL & SWIFT RESIDENTIAL COST HANDBOOK AMENDED BY LOCAL  CONTRACTOR ESTIMATES. NO PHYSICAL OR EXTERNAL INADEQUACIES. LAND TO VALUE RATIO IS COMMON FOR THIS AREA AND CONSISTENT WITH RECENT SALES.   COST APPROACH DOES NOT ALWAYS REPRESENT ACTUAL MARKET VALUE DUE TO OLDER CONSTRUCTION AND CHANGES IN SUPPLY AND DEMAND OVER TIME.  LAND TO VALUE RATIO IS COMMON FOR THIS AREA AND CONSISTENT WITH RECENT SALES.

**Comments on Sales Comparison**
THE SALES CITED ARE CONSIDERED TO BE AMONG THE MOST SIMILAR INDICATORS OF THE SUBJECT'S RANGE OF VALUE.

THERE WAS NO MARKET REACTION FOR 2 BEDROOM VERSUS 3 BEDROOMS IN THIS MARKET SEGMENT. THEREFORE, NO BEDROOM ADJUSTMENT WAS WARRANTED TO COMPARABLE 3.

COMPARABLES 1 AND 2 ARE ADJUSTED FOR SUPERIOR CONDITION HAVING NEWER KITCHENS AND RECENTLY UPDATED COSMETICS. THE ADJUSTMENT CORRESPONDS TO THE MARKET REACTION TO THE COST TO UPDATE THE SUBJECT PROPERTY SIMILAR TO THIS HOME.

COMPARABLE 3 IS ADJUSTED FOR INFERIOR LOCATION ON A BUSY STREET WITH MORE NOISE AND TRAFFIC INFLUENCES.

1/2 BATHROOM ADJUSTED AT $1500.00
FULL BATHROOM ADJUSTED AT $3000.00.

ADJUSTMENT TO GARAGE WARRANTED DUE TO HEATED ROOM OVER SUBJECT'S GARAGE.

ALTHOUGH THE COMPARABLES CITED  ARE VARYING IN STYLE, THESE PROPERTIES WERE CITED WITHIN THE ANALYSIS AS THEY ARE CURRENT SALES LOCATED WITHIN THE SUBJECT'S IMMEDIATE NEIGHBORHOOD AND ARE DEEMED TO BE COMPETING WITH REGARDS  TO LOCATION, QUALITY AND UTILITY AND WOULD BE VIABLE ALTERNATIVES TO THE TYPICAL BUYER.

**Analysis of Current Agreement**

PER MLS NO SALE WAS NOTED ON THE SUBJECT AND NO SALES, OTHER THAN CITED, WERE NOTED ON THE COMPARABLES IN THE PAST 12 MONTHS.

THE SUBJECT IS NOT KNOWN TO BE LISTED FOR SALE, NOR HAS THE SUBJECT BEEN LISTED FOR SALE WITHIN THE PAST 12 MONTHS, PER MLS.

**ADDENDUM**

| Borr: | GOULD | | File | 202342GC | |
|-------|-------|---|------|----------|---|
| Property Add | 10 DRUID AVENUE | | Case No.: | | |
| PEABODY | | | MA | | 01960 |
| Le: | METROPOLITAN CREDIT UNION | | | | |

**Conditions of Appraisal**
THE APPRAISER IS NOT A SURVEYOR. ANY SKETCH IN THIS REPORT IS INCLUDED TO ASSIST THE READER IN VISUALIZING THE PROPERTY, AND THE APPRAISER ASSUMES NO RESPONSIBILITY FOR ITS ACCURACY. THE APPRAISER HAS MADE NO SURVEY OF THE PROPERTY. ALL MEASUREMENTS OF THE SUBJECT PROPERTY ARE APPROXIMATE. THE GLA OBTAINED FOR THE COMPS USED IN THIS REPORT WAS OBTAINED FROM A SOURCE BELIEVED TO BE ACCURATE.

ANY INFORMATION AND OPINIONS FURNISHED TO THE APPRAISER AND CONTAINED IN THIS REPORT WERE OBTAINED FROM SOURCES CONSIDERED RELIABLE AND BELIEVED TO BE TRUE AND CORRECT. HOWEVER, NO RESPONSIBILITY FOR ACCURACY OF SUCH ITEMS FURNISHED TO THE APPRAISER CAN BE ASSUMED BY THE APPRAISER.

**Final Reconciliation**
ALL APPROACHES TO VALUE CONSIDERED. THE INCOME APPROACH WAS NOT DEVELOPED DUE TO LACK OF INVESTOR MARKET. THE COST APPROACH IS NOT WEIGHTED AS THE TYPICAL BUYER IN THIS MARKET DOES NOT PURCHASE NEIGHBORHOOD ON THE COST OF IMPROVEMENTS. MOST EMPHASIS HAS BEEN PLACED ON THE SALES COMPARISON APPROACH IN THE FINAL OPINION OF VALUE AS IT BEST REFLECTS THE ACTIONS AND INTENTIONS OF TYPICAL BUYERS AND SELLERS IN THE MARKET PLACE.

**Additional Comments**
NO PERSONAL PROPERTY WAS GIVEN ANY CONSIDERATION IN THE PREPARATION OF THIS REPORT.

ELECTRONIC SIGNATURES, SECURED WITH SECURITY PROTECTED ACCESS CODES, HAVE ALL BEEN UTILIZED IN THIS REPORT. THIS HAS BEEN APPROVED AND ACCEPTED BY THE APPRAISAL INSTITUTE AND ALL MAJOR BANKS AND LENDING INSTITUTIONS.

THE PHOTOGRAPHS SUBMITTED WITH THIS APPRAISAL ARE ORIGINAL DIGITAL IMAGES. THESE DIGITAL IMAGES HAVE NOT BEEN ALTERED NOR MODIFIED IN ANY SHAPE, NOR FORM AS TO MISLEAD THE LENDER.

File No. 202342GC

**DEFINITION OF MARKET VALUE:**   The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the Appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**   The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated ) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Freddie Mac Form 439 6-93                    Page 1 of 2                    Fannie Mae Form 1004B 6-93

File No. 202342GC

**APPRAISERS CERTIFICATION:**    The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the apprais al report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood sec tion of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the mark etability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the apprais al report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**    If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the apprais al and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**    10 DRUID AVENUE, PEABODY, MA  01960

| **APPRAISER:** | **SUPERVISORY APPRAISER (only if required)** |
|---|---|
| Signature: | Signature: |
| Name: GAIL C. GLISERMAN | Name: AARON M. ADLER |
| Date Signed: 03/18/2002 | Date Signed: 03/18/2002 |
| State Certification #: | State Certification #: CR#36 |
| or State License #: TRAINEE#5031 | or State License #: |
| State: | State: MA |
| Expiration Date of Certification or License: | Expiration Date of Certification or License: |
|  | [X] Did   [ ] Did Not Inspect Property |

**DIMENSION LIST ADDENDUM**

| | |
|---|---|
| Borrower: GOULD | File No.: 202342GC |
| Property Address: 10 DRUID AVENUE | Case No.: |
| City: PEABODY | State: MA    Zip: 01960 |
| Lender: METROPOLITAN CREDIT UNION | |

| | |
|---|---|
| GROSS BUILDING AREA (GBA) | 1,438 |
| GROSS LIVING AREA (GLA) | 1,438 |

| Area(s) | Area | % of GBA |
|---|---|---|
| Living | 1,438 | 100.00 |
| Level 1 | 1,174 | 81.64 |
| Level 2 | 264 | 18.36 |
| Level 3 | | |
| Other | | |
| Basement | | |
| Garage | | |

| Area Measurements | | | Area Type | | | | | |
|---|---|---|---|---|---|---|---|---|
| Measurements | Factor | Total | Level 1 | Level 2 | Level 3 | Other | Bsmt. | Garage |
| 34.00 x 30.00 | x 1.00 | 1,020.00 | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |
| 22.00 x 7.00 | x 1.00 | 154.00 | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |
| 22.00 x 12.00 | x 1.00 | 264.00 | [ ] | [X] | [ ] | [ ] | [ ] | [ ] |

SUBJECT PROPERTY PHOTO ADDENDUM

| Borrower: GOULD | | File No.: 202342GC |
| Property Address: 10 DRUID AVENUE | | Case No.: |
| City: PEABODY | State: MA | Zip: 01960 |
| Lender: METROPOLITAN CREDIT UNION | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Value: $ 260,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: GOULD | | File No.: 202342GC |
|---|---|---|
| Property Address: 10 DRUID AVENUE | | Case No.: |
| City: PEABODY | State: MA | Zip: 01960 |
| Lender: METROPOLITAN CREDIT UNION | | |



**COMPARABLE SALE #1**

10 ST. ANNE'S AVENUE
PEABODY



**COMPARABLE SALE #2**

2 GREENWOOD ROAD
PEABODY



**COMPARABLE SALE #3**

238 LYNN STREET
PEABODY

**LOCATION MAP**

| Borrower: GOULD | File No.: 202342GC |
|---|---|
| Property Address: 10 DRUID AVENUE | Case No.: |
| City: PEABODY | State: MA | Zip: 01960 |
| Lender: METROPOLITAN CREDIT UNION | |

BJS

**FLOORPLAN**

| | |
|---|---|
| Borrower: GOULD | File No.: 202342GC |
| Property Address: 10 DRUID AVENUE | Case No.: |
| City: PEABODY | State: MA    Zip: 01960 |
| Lender: METROPOLITAN CREDIT UNION | |



Sketch by Apex IV Windows™

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Totals |
| GLA1 | First Floor | 1174.00 | 1174.00 |
| GLA2 | Second Floor | 264.00 | 264.00 |
| | | | |
| **TOTAL LIVABLE    (rounded)** | | | **1438** |

| LIVING AREA BREAKDOWN | |
|---|---|
| Breakdown | Subtotals |
| First Floor | |
| 30.0  x  34.0 | 1020.00 |
| 7.0  x  22.0 | 154.00 |
| Second Floor | |
| 12.0  x  22.0 | 264.00 |
| | |
| **3 Areas Total (rounded)** | **1438** |

BJS



After Recording Return To:

Metropolitan Credit Union
200 Revere Beach Parkway
Chelsea, MA 02150,

-------------------------------------[Space Above This Line For Recording Data]--------------------

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated April 2, 2002, together with all Riders to this document.

(B) **"Borrower"** is Richard E. Gould and Eleanor M. Gould. Borrower is the mortgagor under this Security Instrument.

(C) **"Lender"** is Metropolitan Credit Union. Lender is organized and existing under the laws of Massachusetts. Lender's address is 200 Revere Beach Parkway, Chelsea, MA 02150. Lender is the mortgagee under this Security Instrument.

(D) **"Note"** means the promissory note signed by Borrower and dated April 2, 2002. The Note states that Borrower owes Lender ONE HUNDRED THIRTY THOUSAND AND 00/100 Dollars (US $130,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2017.

(E) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(F) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower. [check box as applicable]:

| | | |
|---|---|---|
| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [Specify] |
| [ ] 1-4 Family Rider | [ ] Bi-Weekly Payment Rider | |



## QUITCLAIM DEED

We, RICHARD E. GOULD and ELEANOR M. GOULD, husband and wife, as tenants by the entirety, both of 10 Druid Avenue, South Peabody, Essex County, Massachusetts, for $1.00 and other good and valuable consideration paid, grant to the United States of America **with quitclaim covenants** the land in Peabody, in the County of Essex, Massachusetts, with buildings thereon and shown as Lot A on a plan showing subdivision of land in Peabody, Massachusetts, dated January 19, 1955, drawn by F.J. McCarthy, registered surveyor, and recorded with deed of Edmund S. Gould, et ux, to Edmund R. Gould, et al., Book 4147, Page 366, and bounded and described as follows:

| | |
|---|---|
| NORTHEAST | by Druid Avenue Fifty-four (54) feet; |
| SOUTHEAST | by Sterling Avenue one hundred (100) feet; |
| SOUTHWEST | by a stone wall which separates the premises from land shown on said plan Fifty-three (53) feet; and |
| NORTHWEST | by Lot B as shown on said plan, one hundred (100) feet. |

Being a portion of the premises conveyed to Edmund S. Gould and Svea V. Gould, by deed of Barbara C. Haley dated September 8, 1952, and recorded with Book 3922, Page 379.

Said premises are conveyed subject to a right of way, for all purposes which streets and ways may lawfully be used in, on, and over a strip of land nine (9) feet wide extending sixty-seven (67) feet from said Druid Avenue over said Lot A as shown on said Plan, granted to Edmund R. Gould and Barbara K. Gould.

For our title, see deed dated October 6, 1979, recorded in the Essex South District Registry of Deeds, Book 6640, Page 358.

WITNESS our hands and seals this 16th day of July, 2004.


_____          _____
RICHARD E. GOULD                     ELEANOR M. GOULD

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                    July 16, 2004

Then personally appeared the above named RICHARD E. GOULD and ELEANOR M. GOULD and acknowledged the foregoing to be their free act and deed, before me.


                                   _____
                                   Scott P. Lopez, Notary Public

                                   My commission expires:  12-25-09

**Page 1 of 1**



**ESCROW AGREEMENT**

ESCROW AGREEMENT entered into this 16th day of July, 2004, among RICHARD E. GOULD and ELEANOR E. GOULD, (herein "Surety"), and Michael J. Sullivan, in his official capacity as United States Attorney for the District of Massachusetts (herein "United States Attorney"), and Tony Anastas, in his official capacity as Clerk of the United States District Court for the District of Massachusetts (herein "Escrow Agent").

WHEREAS the Surety is desirous of effecting the release of RICHARD W. GOULD (herein "Defendant") in Criminal No. 04-1814-CBS, on the terms and conditions of bail set forth in an Order Setting Conditions of Release (herein "Bail Order") dated July 16, 2004, and entered by the Honorable Charles B. Swartwood, United States Magistrate Judge, and has agreed to execute a personal bond in the amount of _____ Thousand and 00/100 Dollars ($_____,000.00) (herein "Personal Bond") to secure the Defendant's compliance with the terms and conditions of the Bail Order;

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties hereto agree as follows:

1.    The Surety shall (A) execute a quitclaim deed to the parcel of real property located at 10 Druid Avenue, Peabody, MA, in favor of the United States of America, and deliver said deed to the Escrow Agent to be held in escrow pursuant to the terms of this Agreement (see copy of deed attached hereto as Exhibit A); and (B) execute a mortgage to said parcel in favor of the United States of America with the Clerk of the United States District Court for the District of Massachusetts, as Mortgagee, and record said mortgage at the appropriate Registry of Deeds.

2.    The Surety further agrees to execute any additional documents and take any action necessary to effectuate the transfer of said parcel of real property and facilitate the sale of such property in the event that the Defendant is in default of the terms and conditions of the Bail Order or Personal Bond.

3.    The Escrow Agent shall hold the quitclaim deed in escrow under the following terms and conditions:

A.    In the event the Defendant fails to appear as required at all proceedings in Criminal No. 04-1814-CBS, or otherwise violates any condition of bail, and Defendant is declared to be in default by a judicial officer of the United States District Court for the District of Massachusetts, then, upon order of the Court, and in lieu of or in addition to foreclosure proceedings on any mortgage granted by the Surety, the Escrow Agent shall tender the quitclaim deed to the United States Attorney, and he shall cause the same to be immediately recorded

**Page 1 of 2**

without notice to the Surety. Any requirement that foreclosure proceedings be commenced upon any mortgage granted by the Surety in connection with Criminal No. 04-1814-CBS is expressly waived by the Surety.

B. This Agreement shall terminate upon the final disposition of Criminal No. 04-1814-CBS and written discharge of the bond provided to the Surety by the United States of America. Upon such termination, and upon order of the Court, the Escrow Agent shall deliver the quitclaim deed and a fully executed discharge of mortgage sufficient for recording to the Surety.

4. The validity and construction of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

5. This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and personal representatives.

IN WITNESS WHEREOF, the parties here have caused this Agreement to be executed as of the date first written above.

ESCROW AGENT:                          SURETY:

TONY ANASTAS, CLERK OF COURT

                                       _____
                                       RICHARD E. GOULD

By: _____        _____
        Deputy Clerk                   ELEANOR M. GOULD

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY


By: _____
        Assistant U.S. Attorney

                COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                      July 16, 2004

    Then personally appeared the above named RICHARD E. GOULD and ELEANOR M. GOULD and acknowledged the foregoing to be their free act and deed, before me.


                          _____
                          Scott P. Lopez, Notary Public

                          My commission expires: 12-25-09


                          **Page 2 of 2**



## MORTGAGE

THIS MORTGAGE is made this 16th day of July, 2004, between RICHARD E. GOULD and ELEANOR E. GOULD, presently residing at 10 Druid Avenue, Peabody, MA (herein "Mortgagors"), and the Clerk of the United States District Court for the District of Massachusetts, United States Courthouse, One Courthouse Way, Boston, Massachusetts (herein "Mortgagee").

WITNESSETH, for consideration paid and to secure a personal bond dated July 16, 2004, for Richard W. Gould (herein "Defendant"), in Criminal No. 04-1814-CBS, before the United States District Court for the District of Massachusetts (herein "Court"), in the amount of _____ Thousand and 00/100 Dollars ($____,000.00) executed by the Defendant and the Mortgagors in favor of the United States of America, and to secure due observance and performance of the obligation, terms, and conditions as set forth in an Order Setting Conditions of Release dated July 14, 2004, and filed with the Court, and to further secure the performance of all other covenants and agreements of or by the Defendant and Mortgagors herein for the benefit of the Mortgagee, which may now exist or may hereafter exist or accrue while this Mortgage is still undischarged of record, and in furtherance of and pursuant to an escrow agreement made this day between the Mortgagors, the United States Attorney for the District of Massachusetts and the Mortgagee, the Mortgagors hereby mortgage, with power of sale, the following parcel of real property situated, lying and being in the County of Essex, Commonwealth of Massachusetts, and more particularly described in the following deed:

A deed from Joseph J. Slimak and Theresa M. Slimak, husband and wife, as tenants by the entirety to Richard E. Gould and Eleanor M. Gould, husband and wife, as tenants by the entirety, dated October 6, 1979, and recorded in the Essex South District Registry of Deeds at Book 6640, Page 358;

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property are hereinafter referred to as the "Property".

Page 1 of 3

THE MORTGAGORS covenant with the Mortgagee as follows:

1.    That the Mortgagors shall pay the indebtedness as hereinbefore provided.

2.    That the Mortgagors will keep the Property insured against loss by fire of hazards included within the term "extended coverage" for the benefit of the Mortgagee; that the Mortgagors will assign and deliver the policies to the Mortgagee; and that the Mortgagors will reimburse the Mortgagee for any premiums paid or insurance made by the Mortgagee on the Mortgagors' default in so insuring the Property or in so assigning and delivering the policies.   However, the Mortgagee shall never be required to maintain insurance of any type or description on the Property.

3.    That the Mortgagors shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property, and no building on the Property shall be removed or demolished without the consent of the Mortgagee.

4.    That the Mortgagors will pay all taxes, assessments or water rates, and in default thereof, the Mortgagee may, but is not required to, pay the same.   In the event that the Mortgagee elects not to pay the same, the Mortgagee is not required to so notify the Mortgagors.

5.    That the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, said proceeds not to exceed the dollar amount of the personal bond secured by this Mortgage, shall be delivered to the Mortgagee, who shall hold such proceeds in a non-interest bearing escrow account until either (A) the personal bond has been discharged by the Court, whereupon, and only upon an order of the court, the Mortgagee shall deliver said proceeds to the Mortgagors, or (B) the Defendant fails to observe the Order Setting Conditions of Release and is defaulted by a judicial officer of the Court, whereupon the proceeds shall be disbursed for the benefit of the United States of America in accordance with, and only upon, an order of the Court.

6.    That notice and demand or request may be made in writing and may be served in person or by mail.

7.    That the Mortgagors will warrant and defend the title to the Property against all claims and demands.

8.    That the Mortgagors will create no further encumbrances of any kind against the Property.

**Page 2 of 3**

9. That the Mortgagors, in case a sale shall be made under the power of sale, will, upon request, execute, acknowledge and deliver to the purchaser or purchasers a deed or deeds of release confirming such sale, and that the Mortgagee is appointed and constituted the attorney irrevocable of the Mortgagors to execute and deliver to said purchaser a full transfer of all policies of insurance on the Property at the time of such sale.

10. That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

11. Notwithstanding any other agreement between the Mortgagors and Mortgagee, or any provision of law, the Mortgagee shall not be required to discharge this Mortgage except upon order of the Court. It shall be the obligation of the Mortgagors to furnish the Mortgagee with a certified copy of said order.

IN WITNESS WHEREOF, the Mortgage has been duly executed by the Mortgagors.


RICHARD E. GOULD                    ELEANOR M. GOULD


COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                   July 16, 2004

Then personally appeared the above named RICHARD E. GOULD and ELEANOR M. GOULD and acknowledged the foregoing to be their free act and deed, before me.


Scott P. Lopez, Notary Public

My commission expires: 12-25-09


Page 3 of 3