UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **CRIMINAL ACTION** |
| ) | **NO. 04-1814-CBS** |
| RICHARD GOULD, ) | |
| Defendant, ) | |

**MEMORANDUM OF PROBABLE CAUSE**
**July 19, 2004**

**SWARTWOOD, M.J.**

I. <u>Nature of the Offense and the Government's Motion</u>

On June 30, 2004, a Criminal Complaint was filed charging Richard Gould ("Mr. Gould"), with knowingly and intentionally conspiring to distribute oxycodone, a Schedule II controlled substance, and knowingly and intentionally distributing oxycodone, in violation of 21 U.S.C. §§846 and 841(a)(1).

On June 30, 2004, at Mr. Gould's initial appearance, he was advised of his right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §§3142 (f)(1)(C)(Mr. Gould is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act") and (f)(2)(A)(risk of flight).

On July 14, 2004, a consolidated probable cause/detention hearing was held and at that hearing, Anthony Roberto, Special Agent with the Drug Enforcement Agency ("DEA"), testified on behalf of the Government and was cross-examined by Mr. Gould's counsel. At the conclusion of the evidence, I advised the parties that I would be making a finding of probable cause and the detention portion of this hearing was continued until July 16, 2004 so that Mr. Gould could be interviewed by Pretrial Services. On July 16, 2004, I released Mr. Gould on conditions.

## II. Findings of Fact

1. Since September 2003, the DEA, the Food and Drug Administration ("FDA") and the Peabody Police have been investigating the distribution of OxyContin[1] on the North Shore area of Massachusetts.

2. On the evening of June 29, 2004, special agents assigned to the DEA and the FDA arrested an individual on charges of conspiracy to distribute and distribution of oxycodone. After being advised of his rights, this individual (hereinafter referred to as the "CI") identified Mr. Gould as his OxyContin source for the past seven months.

3. The CI, who agreed to participate in a controlled buy from Mr. Gould, indicated that Mr. Gould had provided him with a

---

[1] OxyContin is a brand name for oxycodone.

pre-paid cellular telephone for the specific purpose of calling him to arrange for the delivery of OxyContin.

4. From the evening of June 29, 2004 through the morning of June 30, 2004, the CI had several consensually-recorded telephone conversations with Mr. Gould during which Mr. Gould indicated he would get the CI 300 80 mg tablets of OxyContin on the morning of June 30, 2004, and his supply would be gone on the 30th. One of the conversations between the CI and Mr. Gould was conducted over the "push to talk" feature of the phone. Mr. Gould reprimanded the CI for using that feature to discuss the transaction and the conversation was terminated.

5. On the morning of June 30th, Mr. Gould and the CI had a conversation in which Mr. Gould agreed to bring the CI 500 OxyContin tablets. Mr. Gould told the CI that was all the OxyContin he would have for the week.

6. On June 30, 2004, at about 11:15 a.m., Mr. Gould was observed by surveillance agents parking his vehicle in front of 5/10 Trask Court in Beverly, Massachusetts (the CI lived at Trask Court). Mr. Gould exited his vehicle and began to walk around a building when he was approached by law enforcement agents. When the agents identified themselves, Mr. Gould ran. Mr. Gould was eventually apprehended and a search of the area where he was seen running resulted in the discovery of a plastic bag containing 502 green pills that were marked OC/80.

III.  <u>Probable Cause</u>

Mr. Gould's counsel argued that since the transaction in this case involved only a confidential informant and Mr. Gould, there can be no conspiracy.  I agree that because the drug transaction described in the Complaint involved only Mr. Gould and the Government's CI, Mr. Gould cannot be charged with a conspiracy offense relating to that transaction.[2]  However, the Government has presented overwhelming evidence that Mr. Gould was arrested in the act of delivering a significant amount of oxycodone to the CI.  Therefore, I find that there exists probable cause to believe that Mr. Gould committed the offense of knowingly and intentionally distributing oxycodone as alleged in the Complaint.

<pre>
                              /s/Charles B. Swartwood, III
                              CHARLES B. SWARTWOOD, III
                              MAGISTRATE JUDGE
</pre>

---

[2]  The CI told Special Agent Roberto that for the several months prior to the CI's arrest and cooperation, Mr. Gould had been his source of supply for 400 to 800 OxyContin pills each week.  As to those transactions, if charged, there would exist probable cause for the offense of conspiracy to distribute oxycodone.